IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER BRUCE BRILL,**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**ANDREW SAUL,**<br>**Commissioner of Social Security,**<br><br>    **Defendant.** | Case No. 3:20-cv-05064-NKL |

## ORDER

Christopher Brill appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits under Title II and Title XVI of the Social Security Act. Doc. 3 (Social Security Complaint); Doc. 12 (Brill's Social Security Brief). Brill argues this case should be remanded because the Administrative Law Judge ("ALJ") violated Social Security Ruling ("SSR") 96-8p when she failed to explain why Brill's RFC deviated from a medical opinion she found persuasive. For the reason stated below, the Court finds the ALJ did not violate SSR 96-8p, and the ALJ's decision is AFFIRMED.

**I. Background**

On September 21, 2017, Brill filed a Title II application for disability and disability insurance benefits and a Title XVI application for supplemental security income. Transcript ("Tr."), at 10.[1] Brill alleged his disability began October 31, 2015. *Id.* Brill's application stated

---

[1] The Transcript can be found at docket entry 10.

1

that he suffers from the following conditions: severe social anxiety and panic attacks; depression; sleep terrors and nightmares; manic disorder; and insomnia. These claims were initially denied on December 5, 2018, and Brill requested a hearing before an ALJ. *Id.* The ALJ held a hearing on January 16, 2019. *Id*. at 10. On August 5, 2019, the ALJ again found Brill was not disabled. *Id.* at 10-23. On May 29, 2020, the Appeals Council declined to review the ALJ's decision. *Id.* at 1-3. Brill subsequently appealed to this Court.

### A. Medical History.

Since February 3, 2014, Brill has repeatedly and consistently sought medical treatment for a variety of symptoms. *See*, *e.g.*, Tr. at, 279, 458. During this time, Brill has complained of the following symptoms: anxiety, depression, alcohol and drug abuse, exhaustion, insomnia, vivid nightmares, passive suicidal ideation, audio and visual hallucinations, panic attacks, hopelessness, and lucid dreams he could not distinguish from reality. Tr. at 280, 288, 367, 376, 419, 458, 547, 2283, 2552, 2808. Brill received the following diagnosis from his health care providers during this time: generalized anxiety disorder, psychogenic nightmares, insomnia, substance-induced depressive and anxiety disorder, and alcohol use disorder. Tr. at 377, 409, 421, 474, 572. He also tested positive for multiple illegal substances. Tr. at 17.

### B. Medical Opinions[2]

Nurse Kuzara ("Kuzara") treated Brill repeatedly after his alleged onset date. Tr. at 532-35, 538, 547, 559, 568-69, 584-85, 598. On October 17, 2017, she completed a Medical Source Statement ("MSS"). Tr. at 572-73. Kuzara stated Brill was markedly limited in his ability to maintain attention and concertation for extended periods; perform activities within a schedule; sustain an

---

[2] There were additional medical opinions from other experts in the record, but they are not relevant to this appeal.

ordinary routine without supervision; and work in coordination with or proximity to others without being distracted by them. Tr. at 573. Kuzara also opined that Brill was moderately limited in his ability to: understand and remember detailed instructions; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. at 572-73.

The ALJ evaluated Kuzara's MSS when making her decision and was not fully persuaded by it. Tr. at 20. Specifically, the ALJ disagreed with Kuzara's findings of marked limitations because those limitations were inconsistent with the record. Tr. at 20. However, the ALJ found that the moderate limitations identified by Kuzara were "consistent with the record as a whole". Tr. at 20.

### C. The ALJ's Decision

Pursuant to the Social Security Act, the Social Security Administration follows a five-step sequential evaluation process when determining disability. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citing 20 C.F.R. § 416.920). First, an ALJ considers whether the claimant is doing any substantial gainful activity—defined as work activity that is both substantial and gainful. Tr. at 11. The ALJ determined that Brill had not engaged in substantial gainful activity since October 31, 2015—the alleged onset date of his disability. Tr. at 13.

Second, the ALJ determines whether the claimant has severe impairments. *Eichelberger*, 390 F.3d at 590. The ALJ determined that Brill had the following severe impairments: depressive disorder, mood disorder, bipolar disorder, Asperger's syndrome, attention deficit hyperactivity disorder, obsessive compulsive disorder, generalized anxiety disorder, nightmare disorder, methamphetamine use disorder, benzodiazepine use disorder, alcohol use disorder and marijuana use disorder. Tr. at 13.

Third, the ALJ determines whether the claimant's impairments meet the criteria of any Social Security Income listings. *Eichelberger*, 390 F.3d at 590. The ALJ determined that Brill did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. at 13-14.

Fourth, the ALJ determines whether the impairment prevents the claimant from performing past relevant work. *Eichelberger*, 390 F.3d at 590 (citation omitted). Fifth, the ALJ determines whether the impairment prevents the claimant from doing any other work. *Id*. Before making the last two determinations, the ALJ must determine the claimant's residual function capacity ("RFC"). The RFC is the "most the claimant can still do despite her limitations." 20 C.F.R. 404.1545(a)(10).

The ALJ determined that Brill had the RFC to:

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: the individual can understand, remember, and follow simple instructions and can perform simple, routine, repetitive tasks that are not performed at a production rate pace where each task must be completed within a strict time deadline. The individual can have occasional interaction with supervisors and coworkers but may not perform tasks as an integral part of a team and may not provide customer service to the public. The individual can perform low stress work defined as involving only occasional decision making and only occasional changes, in a single, substance-free worksite, that are consistent with the aforementioned limitations and are introduced gradually. Tr. at 15.

When formulating the RFC, the ALJ stated she considered all of Brill's medical evidence, including the medical opinions. As a result of Brill's RFC, the ALJ determined Brill was unable to perform his past relevant work. Tr. at 21. However, the ALJ determined that Brill was not disabled because there were jobs that existed in significant numbers in the national economy that Brill could perform. Tr. at 21-22 (listing industrial cleaner, store laborer and folding machine operator).

4

## II. Legal Standard

"The Court must affirm the Commissioner's denial of social security benefits so long as 'there was no legal error' and 'the findings of fact are supported by substantial evidence on the record as a whole.'" *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *2 (W.D. Mo. Feb. 9, 2021) (quoting *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016)). Substantial evidence is less than a preponderance of evidence but enough that a reasonable mind could find the evidence adequate to support the ALJ's conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court must consider evidence that both supports and detracts from the ALJ's decision. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

## III. Discussion

### A. Whether the RFC Deviated from the Moderate Limitations in Kuzara's Opinion

SSR 96-8p states an ALJ's RFC assessment "must always consider and address medical source opinions." *See* SSR 96-8p, 1996 WL 374184, at *7. If the RFC assessment conflicts with an opinion from a medical source, then the adjudicator must explain why the opinion was not adopted. *Id.* If a SSR is violated, then remand is required. *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (remanding for clarification when ALJ failed to explain why the RFC deviated from a medical opinion); *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990) ("This court has previously held that an agency's failure to follow its own binding regulations is a reversible abuse of discretion.") (collecting sources).

Thus, for Brill to show remand is required under 96-8p, he must show that the ALJ either did not consider Kuzara's opinion or that the ALJ's RFC conflicted with Kuzara's opinion and the ALJ did not explain the contradiction.

Brill does not and cannot argue that the ALJ did not consider Kuzara's opinion because the record shows that the ALJ considered Kuzara's MSS. Tr. at 20. The ALJ stated that, while she was not fully persuaded by the opinion, Kuzara's opinion that Brill had certain "moderate limitations" was "consistent with the record as a whole." Tr. at 20.

Instead, Brill argues that remand is required because the ALJ's RFC did not account for Kuzara's opinion that Brill had moderate limitations, and the ALJ did not explain why the RFC deviated from this opinion it found persuasive. Brill specifically contends that the RFC fails to account for two of the moderate limitations in Kuzara's opinion. First, Brill argues that the RFC fails to account for Brill's moderate limitation in his ability to get along with coworkers without exhibiting behavioral extremes or distracting them. Second, Brill argues his RFC deviates from Kuzara's opinion because it does not account for his moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. Brill argues that if the RFC accounted for Bill's limited ability to accept supervision, then Brill would not have been able to perform unskilled work because SSR 85-15 states the "basic demands of competitive, remunerative, unskilled work include . . . the ability to respond appropriately to supervision, workers and usual work situations." SSR 85-15, 1985 WL 67857, *4.

In Kuzara's MSS she states that Brill was "Moderately Limited" in his ability to (1) accept instructions and respond appropriately to criticism from supervisors and (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. at 573. Moderately Limited was defined by Kuzara as:

> Moderately Limited-impairment levels are compatible with some, but not all useful functioning. Considered to be 1 standard deviation below the norm or 30% overall reduction in performance. Tr. 572.

Kuzara thus opined that Brill was able to handle some, but not all, situations in which he would need to accept instructions; respond appropriately to criticism; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Brill was 30% worse at these functions than the average person.[3]

The RFC stated Brill could carry out simple instructions; perform simple, routine, stress-free work with only occasional decision making; interact with coworkers and supervisors occasionally; and could never be an integral part of a team.

### 1. Whether the RFC Is Consistent With Kuzara's Opinion that Brill is Moderately Limited in His Ability to get Along With His Coworkers

The RFC is consistent with Kuzara's opinion that Brill is moderately limited in his ability to get along with coworkers. *Short v. Berryhill*, No. 2:15-CV-88 NAB, 2017 WL 1164771, at *2 (E.D. Mo. Mar. 29, 2017), is illuminating because it dealt with a nearly identical situation. In *Short*, the MSS stated that the claimant was moderately limited—which was defined as having impairment levels compatible with some, but not all, useful functioning—in his ability to get along with co-workers or respond appropriately to supervisors. The RFC stated claimant was only to occasionally interact with supervisors and co-workers (no more than one-third of an eight-hour work day). *Id.* at *4. Short argued that the RFC limitations were insufficient to accommodate his

---

[3] The Commissioner argues that, because this definition of moderate is different than the commonly accepted definition, this definition should be disregarded. The Commissioner cites to *Barber v. Astrue*, No. CIV. 11-3046, 2012 WL 3230469, at *14 (W.D. Ark. Aug. 6, 2012). However, in *Barber*, the Court imported the common definition because the form did not define moderate. *Id.* Here, the form defines "moderately limited." The Court sees no reason to import a different definition of moderate that Kuzara did not intend to apply when completing the MSS. Indeed, in *Eden v. Berryhill*, this Court applied a definition of "moderately limited" that is nearly identical to how the term is defined here. No. 3:18-CV-5056-NKL, 2019 WL 1763248, at *2 (W.D. Mo. Apr. 22, 2019) (form defined moderately limited as "Impairment levels are compatible with some, but not all, useful functioning."). Consequently, the Court will interpret Kuzara's opinion based on the definition of Moderately Limited in the MSS.

moderate limitations. The Court disagreed because a moderate limitation, as defined in the form, did not mean a claimant cannot function in that area. *Id.* Consequently, the limitations in the RFC accounted for this limitation.

Additionally, in *Suter v. Berryhill*, this Court found that an RFC which limited the claimant to unskilled work with "only occasional interactions with the public and coworkers" was consistent with an opinion that claimant had "moderate limitations in social interactions." No. 4:16-CV-00457-NKL, 2017 WL 1476156, at *10 (W.D. Mo. Apr. 25, 2017). Other Courts have agreed with this analysis. *See Wright v. Astrue,* No. 10-0883-SSA-CV-W-MJW, 2011 WL 6012935, at *3 (W.D. Mo. Dec. 1, 2011), *aff'd*, 489 F. App'x 147 (8th Cir. 2012) (stating an RFC that precludes interactions with the public and only allows occasional interactions with coworkers "specifically takes into account plaintiff's moderate difficulties in social functioning"); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) ("[T]he ALJ accounted for Seamon's moderate limitation in social functioning by restricting her to 'brief and superficial contact with others'").

As in the aforementioned cases, here, the RFC is consistent with the moderate limitation in Brill's ability to get along with his coworkers without distracting them or exhibiting behavioral extremes. The RFC accounts for Kuzara's opinion that Brill could handle some but not all interactions with coworkers, and Brill would have a 30% reduction in his ability to interact with his coworkers, by ensuring he can only have occasional interactions with his coworkers. Furthermore, the RFC limits Brills' social interactions by excluding jobs that require him to perform tasks as an integral part of a team. Put simply, Kuzara's opinion is that Brill can handle some but not all social situations, and the RFC accounted for that limitation by limiting, though not eliminating, Brill's social interactions at his job.

8

Case 3:20-cv-05064-NKL   Document 22   Filed 11/05/21   Page 8 of 11

Brill cites to *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *2 (W.D. Mo. Feb. 9, 2021), for support for his position that the RFC does not account for the quality of his social interactions. However, *Alhilfy* is clearly distinguishable. In *Alhilfy*, the Court found that an RFC that had only two limitations—that the claimant was to have no contact with the general public and could only perform work that was of a simple, routine and repetitive nature—was inconsistent with an opinion that that the claimant was moderately limited in his ability to work with others and accept instructions and criticisms from his supervisors. *Id.* As discussed above, Brill's RFC contained additional limitations on the amount of interactions Brill could have with his coworkers and supervisors. Additionally, Brill is never to be an integral part of a team. These restrictions adequately account for his moderate limitation in the ability to get along with his coworkers and supervisors, and *Alhilfy* is inapplicable.

### 2. Whether the RFC is Consistent With Kuzara's Opinion that Brill is Moderately Limited in His Ability to Accept Instructions and Respond Appropriately to Criticism

The RFC also does not deviate from Kuzara's opinion that Brill was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors.

In *Eden v. Berryhill*, No. 3:18-CV-5056-NKL, 2019 WL 1763248, at *2 (W.D. Mo. Apr. 22, 2019), the ALJ gave great weight to a physician's opinion that plaintiff was moderately limited—defined as "[i]mpairment levels are compatible with some, but not all, useful functioning"—in her ability to respond appropriately to criticism from supervisors. Claimant argued that the RFC, which stated claimant could "engage in occasional and superficial interaction with coworkers and supervisors," did not incorporate this limitation. *Id.* *1-2. This Court found that "Christy's opinion that Eden had 'some, but not all, useful functioning' in accepting instructions and responding appropriately to criticism from supervisors is consistent with the

ALJ's conclusion that she can 'carry out simple work instructions and procedures, and can adapt to changes in the workplace that are simple, predictable, and can be easily explained,' and that she 'can engage in occasional and superficial interaction with coworkers and supervisors.'" *Id.* at *2.

Here as in *Eden*, the medical opinion stated that the claimant was capable of some, but not all, useful functioning when it came to accepting instructions and responding appropriately to criticisms, and the ALJ adequately accounted for Brill's ability to handle some but not all instructions and criticism by stating Brill could "follow simple instructions and . . . perform simple, routine, repetitive tasks." Tr. at 15. Precluding work that required Brill to follow complex instructions or complete challenging tasks accounts for Brill's limitation because it limits Brill to only handling certain instructions and criticism. *See Wessling v. Berryhill*, No. 17-00383-CV-W-ODS, 2018 WL 3873590, at *4 (W.D. Mo. Aug. 15, 2018) ("Plaintiff contends the ALJ should have included limitations regarding his interactions with supervisor, his moderately limited ability to accept instructions and respond appropriately to criticism from supervisors. . . . The RFC also allowed no public interaction, and only occasional interaction with coworkers . . . the record does not support additional or more severe mental limitations"); *Fields v. Astrue*, No. 11-3480-SSA-CV-S-MJW, 2013 WL 174385, at *3 (W.D. Mo. Jan. 16, 2013) (stating the ALJ adequately accounted for plaintiff's moderate limitations in his ability to accept criticism when it stated he only had to do unskilled work with occasional contact with coworkers); *Adkins v. Astrue*, No. 09-3227-CV-S-REL-SSA, 2011 WL 529756, at *19 (W.D. Mo. Feb. 4, 2011) (stating that an RFC that limited plaintiff's contact with supervisors is consistent with a moderate limitation in plaintiff's ability to accept criticism).

Plaintiff cites to *Porter v. Berryhill*, No. 4:17-CV-00072-NKL, 2018 WL 1183400, at *11 (W.D. Mo. Mar. 7, 2018), but *Porter* is distinguishable. In *Porter*, the only limitations were on

10

the claimant's interactions with his coworkers, not his supervisors. *Id.* at *12. And this Court explicitly found that the RFC was inadequate because it did not "incorporate a restriction on Porter's ability to interact with supervisors." Here, Brill's RFC specifically precludes him from more than occasional interaction with his supervisors. Tr. at 15.

Lastly, the Court acknowledges that SSR 85-15p states that a claimant cannot perform unskilled work if they cannot accept criticism or follow instructions. But Kuzara did not state that Brill was incapable of responding to criticism or following instructions at all, but rather, that he was moderately limited in these areas. As discussed above, the RFC adequately accounted for these moderate limitations. The RFC therefore did not violate SSR 96-8p by failing to include greater limitations on Brill's ability to interact with supervisors in the RFC.

## II. Conclusion

For the reasons discussed above, the Court AFFIRMS the ALJ's decision.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 5, 2021
Jefferson City, Missouri

11

Case 3:20-cv-05064-NKL   Document 22   Filed 11/05/21   Page 11 of 11